UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                              :

DR. GERALD R. FINKEL,                 :
*as Chairman of the Joint Industry Board of*  :
*the Electrical Industry*,           :

                            :              23-CV-1269 (VSB)
                  Plaintiff,   :

                            :           **OPINION & ORDER**
        - against -         :

                            :

STRUCTURE TONE, LLC,         :

                            :

                  Defendant.  :

                            :
--------------------------------------------------------X

Appearances:

Adrianna Grancio
Virginia & Ambinder LLP
New York, NY
*Counsel for Plaintiff*

Aaron C. Schlesinger
Peckar & Abramson, P.C.
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

       Plaintiff, on behalf of various multiemployer benefit funds, sued Defendant in state court.

In that action, Plaintiff asserted a claim under New York law that Defendant—a general

contractor—is liable for a subcontractor's unpaid contributions to Plaintiff's benefit funds. *See*

N.Y. Lab. Law § 198-e. Defendant removed the case to this Court based on federal-question

jurisdiction, arguing that the Employee Retirement Income Security Act ("ERISA") and the

Labor Management Relations Act ("LMRA") preempt Plaintiff's cause of action. Before me are

Plaintiff's motion to remand the case to state court, Defendant's motion for judgment on the

pleadings against Plaintiff's original complaint, and Plaintiff's conditional motion to amend the complaint if Plaintiff's original complaint is preempted by ERISA or the LMRA.

As a matter of first impression, I conclude that when a collective bargaining agreement establishes an employer's obligation to contribute to a benefit fund, ERISA and the LMRA each preempt an action asserted under Section 198-e of New York's Labor Law to collect a subcontractor's delinquent fund contributions from a general contractor. Plaintiff's motion to remand is therefore DENIED—there is federal jurisdiction because ERISA and the LMRA preempt Plaintiff's state labor law claim. Plaintiff's motion for leave to amend its complaint is GRANTED IN PART as to its proposed ERISA and LMRA claims against O.H.&M. Electrical Corp. ("OHM"), the subcontractor not currently a party to this action, and DENIED IN PART as to the proposed Section 198-e claim against Defendant Structure Tone, as the reasserted Section 198-e claim is preempted. Finally, Defendant's motion for judgment on the pleadings is DENIED as moot.

## I.    <u>Background</u>

Plaintiff Dr. Gerald R. Finkel is the chairman of the Joint Industry Board (the "Board"). (Doc. 1-1 ("Compl.") ¶ 2.) The Board administers seven multiemployer benefit plans (the "Plans")[1] pursuant to a collective bargaining agreement (the "CBA") between a union[2] and certain employers or employer organizations.

Defendant Structure Tone, LLC ("Structure Tone") is the general contractor on three skyscraper construction projects in Manhattan. (Compl. ¶ 9.) Structure Tone is not a party to the

---

[1] The Plans are: "(1) the Pension, Hospitalization and Benefit Plan of the Electrical Industry; (2) the Dental Benefit Fund of the Electrical Industry; (3) the Educational and Cultural Trust Fund of the Electrical Industry; (4) the Annuity Plan of the Electrical Industry; (5) the Health Reimbursement Account Plan of the Electrical Industry; (6) the Deferred Salary Plan of the Electrical Industry; and (7) the Joint Apprenticeship and Training Program." (Compl. ¶ 3.)

[2] Local No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO.

CBA.  (*See generally* Compl.)  On or after January 4, 2022, Structure Tone engaged OHM as a subcontractor electrician on the construction projects.  (*Id*. ¶¶ 10–11.)  OHM is not a party in this action, but is a party to the union's CBA, which mandates that OHM pay into the benefit Plans by remitting a certain per-work-hour contributions to Plaintiff.  (*Id*. ¶ 13.)  Plaintiff alleges that between June 15 and December 7, 2022, OHM failed to remit $1,413,208 of contributions to the Plans as required by the CBA.  (*Id*. ¶ 16.)

## II.    Procedural History

 On January 26, 2023, Plaintiff filed this action in the Supreme Court of New York for New York County, asserting a single claim against Structure Tone for OHM's unpaid benefit fund contributions under Section 198-e of the New York Labor Law.  (*See* Compl.)  On February 15, 2023, Defendant removed the action to this Court, asserting that preemption doctrines confer federal-question jurisdiction under 28 U.S.C. § 1331.  (*See* Doc. 1 ("NOR").)  Following Plaintiff's appearance, (Doc. 8), Defendant answered the complaint on March 15, 2023, (Doc. 12 ("Ans.").)

On March 16, 2023, Plaintiff filed a motion to remand the case to state court, (Doc. 13), along with a supporting memorandum of law, (Doc. 15 ("1st Pl. Mem.")).  On May 15, 2023, Defendant filed a cross motion for judgment on the pleadings to dismiss the complaint.  (Doc. 18.)  The same day, Defendant filed a memorandum of law in opposition to remand and in support of its motion for judgment on the pleadings, (Doc. 19 ("1st Def. Mem.")), and a supporting declaration, (Doc. 20 ("Schlesinger Decl.")).  On June 28, 2023, Plaintiff filed a reply memorandum of law in support of its motion to remand, (Doc. 24 ("Remand Reply")), a conditional motion for leave to amend its complaint, (Doc. 25), and a memorandum of law in support of the motion to amend and in opposition to the motion for judgment on the pleadings,

(Doc. 27 ("2d Pl. Mem.")).  On July 12, 2023, Defendant filed a memorandum of law in further

support of its motion for judgment on the pleadings and in opposition to Plaintiff's motion for

leave to amend.  (Doc. 29 ("2d Def. Mem.").)  On July 19, 2023, Plaintiff filed a reply

memorandum of law in support of its motion for leave to amend.  (Doc. 34 ("Amend Reply").).

**III.**    **Plaintiff's Motion to Remand**

I first address Plaintiff's motion to remand this action to the state court.  Because federal

law preempts Plaintiff's state labor law claim, Plaintiff's motion to remand is DENIED.

**A. *Legal Standard***

On a motion to remand, the "party seeking removal bears the burden of showing that

federal jurisdiction is proper."  *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 327

(2d Cir. 2011) (citing *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir.

2004)).  Pursuant to 28 U.S.C. § 1441(a), a defendant may remove to federal court "any civil

action brought in a State court of which the district courts of the United States have original

jurisdiction."  As relevant here, a district court has "original jurisdiction of all civil actions

arising under the Constitution, laws, or treaties of the United States."  *Id*. § 1331.  Generally,

whether there is original federal jurisdiction under Section 1331 depends on whether "the face of

the plaintiff's properly pleaded complaint" raises a "federal question," *i.e.*, whether the

complaint asserts a claim under a federal statute or the United States Constitution.  *Caterpillar

Inc. v. Williams*, 482 U.S. 386, 392 (1987).  "The rule makes the plaintiff the master of the claim;

he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Id*.

However, there is "an independent corollary to the well-pleaded complaint rule" that is

relevant here.  *Id*. at 393 (internal quotation marks omitted).  When a federal statute completely

preempts the state-law cause of action, federal preemption "converts an ordinary state common-

law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."

*Id*. (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987) [hereinafter *MetLife*]).

Whether a federal statute preempts a state-law cause of action for purposes of federal-question

removal is a question of law.  *See Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 59 (2d Cir. 2010).

### B.  *Discussion*

Defendant argues that removal is proper because Sections 502 and 514 of ERISA, 29

U.S.C. §§ 1132, 1144, and Section 301 of the LMRA, *id*. § 185, completely preempt Plaintiff's

claim.  I agree.

### 1.  ERISA Preemption

Congress enacted ERISA "to provide a uniform regulatory regime over employee benefit

plans."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).  Three of its provisions are

relevant to this action.  First, Section 515 of ERISA, 29 U.S.C. § 1145, imposes "a substantive

requirement that an employer make contributions to a multiemployer ERISA plan as specified in

the plan or collective bargaining agreement."  *Metal Lathers Loc. 46 Pension Fund v. River Ave.*

*Contracting Corp.*, 954 F. Supp. 2d 250, 255 (S.D.N.Y. 2013) (quoting *Greenblatt v. Delta*

*Plumbing & Heating Corp.*, 68 F.3d 561, 568 (2d Cir. 1995)).  Second, Section 502(a) of ERISA,

29 U.S.C. § 1132(a), authorizes a plan fiduciary to bring a civil action to remedy a violation of

ERISA or a plan, including a violation of Section 515.  *See also id*. § 1132(g)(2) (enumerating

available remedies in an action "by a fiduciary for or on behalf of a plan to enforce [Section

515]").  Third, Section 514 of ERISA, 28 U.S.C. § 1144(a), expressly preempts, or

"supersede[s]," state laws that "relate to any employee benefit plan" otherwise covered by

ERISA.  The Supreme Court has described this as an "expansive pre-emption provision[] . . .

intended to ensure that employee benefit plan regulation" is "exclusively a federal concern." *Davila*, 542 U.S. at 208 (internal quotation marks omitted).

Thus, state-law "'causes of action within the scope of the civil enforcement provisions of [ERISA Section] 502(a) are removable to federal court,'" because Section 514 completely preempts "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy."[3]  *Davila*, 542 U.S. at 209 (quoting *MetLife*, 481 U.S. at 66).  A claim is "'within the scope'" of the statute if:  (1) "the plaintiff is the type of party that can bring a claim" under Section 502(a); (2) the plaintiff's claim "can be construed as a colorable claim" under Section 502; and (3) "'there is no other independent legal duty that is implicated by [the] defendant's actions.'"  *Montefiore*, 642 F.3d at 328 (quoting *Davila*, 542 U.S. at 210) (emphasis omitted).

### a.  Type of Party

The first question is whether Plaintiff is "the type of party that can bring a claim" under Section 502(a).  *Montefiore*, 642 F.3d at 329.  The inquiry is whether Plaintiff is one of the enumerated parties that Section 502(a) authorizes to bring an ERISA enforcement action.  *See id*. ("Generally, § 502(a) is narrowly construed to permit only the enumerated parties to sue directly

---

[3] Courts within the Second Circuit sometimes articulate a rule that a state-law cause of action "within the scope of the civil enforcement provisions of ERISA § 502(a)" is only removable if "the cause of action is based on a state law that is preempted by ERISA."  *Romney v. Lin*, 94 F.3d 74, 78 (2d Cir. 1996) (internal quotation marks omitted); *see, e.g.*, *Venturino v. First Unum Life Ins. Co.*, 724 F. Supp. 2d 429, 433 (S.D.N.Y. 2010) ("Even if the Defendants were able to raise ERISA preemption as a successful defense to [the plaintiff]'s claim, such preemption would not suffice to confer jurisdiction on this Court.").  This two-step inquiry comes from a Supreme Court decision in which the Court, applying the well-pleaded-complaint rule, concluded that "a suit by state tax authorities" did not "arise under ERISA" and was therefore not removable, even though ERISA preemption may have been a valid defense to the lawsuit.  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 25–26 (1983).  The Supreme Court's subsequent rulings that "causes of action within the scope of the civil enforcement provisions of § 502(a) are removable to federal court," however, imply that ERISA necessarily preempts such claims and a separate pure-preemption analysis is unnecessary.  *Davila*, 542 U.S. at 209 (quoting *MetLife.*, 481 U.S. at 66); *see Montefiore*, 642 F.3d at 327–28 (analyzing only whether "claims fall within the scope of § 502[]" to determine whether the claims are preempted and removable).

for relief.").  The Second Circuit has also described this inquiry as whether Section 502(a) confers "standing to pursue an ERISA claim."  *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 148 (2d Cir. 2017).

Section 502(a)(3) permits a plan "fiduciary" to bring a civil action to enforce a plan's contribution requirements.  *See also* 29 U.S.C. §§ 1132(g), 1145.  Plaintiff concedes that he is a fiduciary of the Plans for which he is seeking Defendant's contribution.  (Remand Reply at 4–6.) Plaintiff is therefore "the type of party that can bring a claim" to enforce the Plans' contribution requirements.  *Montefiore*, 624 F.3d at 329.

### b.  Type of Claim

The next question is whether Plaintiff's claim "can be construed as a colorable claim" under Section 502.  *Montefiore*, 642 F.3d at 328.  A claim that "could have been brought under ERISA" is a colorable claim.  *Id*. (internal quotation marks and emphasis omitted).  On the other hand, a claim that is "brought solely pursuant to an independent duty that has nothing to do with ERISA . . . does not state a colorable claim" under Section 502.  *Id*. (internal quotation marks and emphasis omitted).

Plaintiff could have brought its claim under Section 502(a), because the statute affords a cause of action to fiduciaries to recover delinquent contributions pursuant to the terms of the collective bargaining agreement establishing the ERISA plans in question.  *See Romney v. Lin* (*Romney I*), 94 F.3d 74, 81 (2d Cir. 1996) ("ERISA § 502(a) already provides a cause of action to enforce employer contributions to ERISA plans:  a plan fiduciary may obtain relief for delinquencies pursuant to ERISA § 515."); *32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 98 (2d Cir. 2019) ("ERISA authorizes fiduciaries of an employee benefit plan to bring suit to compel the payment of delinquent fund contributions.").  Plaintiff does not seriously

contend that ERISA does not provide a cause of action for delinquent-contribution claims. (*See* Remand Reply at 5.) Instead, Plaintiff argues that its claim is not colorable under ERISA Section 502(a) because the statute only authorizes fiduciaries to bring delinquent-contribution claims against "the employer, or another fiduciary of the plan." *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009); *see id.* at 82 n.4 (citing 29 U.S.C. § 1109). (1st Pl. Mem. at 9–14.) According to Plaintiff, since ERISA does not provide a cause of action to recover delinquent contributions from a non-employer or a non-fiduciary—such as a general contractor not a party to a CBA—the cause of action under Section 198-e of the New York Labor Law is outside the ambit of ERISA and not preempted. (*Id.*) *Cf. Bricklayers Ins. & Welfare Fund v. Gravity Constr. Corp.*, No. 23-CV-5572, 2024 WL 1193713, at *1 (E.D.N.Y. Feb. 29, 2024) ("ERISA itself does not permit indemnification or contribution for unpaid benefit liabilities between non-co-fiduciaries under a plan.").

Plaintiff's argument ignores that an animating concern of ERISA's "expansive" preemption provision, *Davila*, 542 U.S. at 208 (internal quotation marks omitted), is to "eliminat[e] the threat of conflicting or inconsistent State and local regulation of employee benefit plans," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987) (internal quotation marks omitted). In *Pilot Life*, the Supreme Court examined the text, structure, and legislative history of ERISA, concluding that the statute's "civil enforcement remedies were intended to be exclusive." *Id.* at 54. Thus, the fact that Section 502 permits plan fiduciaries to sue employers and co-fiduciaries for delinquent contributions—and does not provide for contribution enforcement lawsuits against other parties—weighs in favor, rather than against, a finding that Plaintiff's claim falls within the scope of Section 502. *See id.* at 54 ("The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted provide strong

evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." (internal quotation marks omitted and alteration adopted)).

The Second Circuit reached a similar conclusion in *Romney I*, 94 F.3d 74. There, the Second Circuit considered whether ERISA preempted an action brought pursuant to Section 630(a) of the New York Business Corporations Law, which provides that the "ten largest shareholders of every corporation . . . shall jointly and severally be personally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees." *Romney I*, 94 F.3d at 79 (quoting N.Y. Gen. Bus. Law. § 630(a) (emphasis omitted and alteration adopted)). The plaintiff sought to enforce an employer's plan contribution requirements by bringing an action under the New York law against some of the employer's shareholders. *Id*. at 77. The Court of Appeals concluded that the plaintiff's action fell within the scope of Section 502(a) even though the shareholders were not the "employer," noting that "Congress could have provided" for shareholder liability, "but did not." *Id*. at 81.

The logic employed in *Romney I* applies here as well. ERISA not only precludes any state-law causes of action that parallel the causes enumerated in Section 502(a), but also precludes any causes that are omitted from Section 502(a), including Plaintiff's action against a general contractor for a subcontractor's delinquent contributions. *See also Pilot Life*, 481 U.S. at 54 ("The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." (internal quotation marks omitted and alteration adopted)). Therefore, even though Section 502(a) does not permit a fiduciary to bring an action against a general contractor to enforce a subcontractor's delinquent contributions, Plaintiff's

action raises a "colorable" claim "within the scope" of Section 502(a).  *Montefiore*, 642 F.3d at 329.

c.  <u>Independent Legal Duty</u>

As I have concluded that Plaintiff is the type-of-party and the claim at issue matches ERISA's delinquent-contribution cause of action, I must determine "whether some other, completely independent duty forms another basis for legal action."  *Montefiore*, 642 F.3d at 332 (emphasis omitted).  A duty is independent if, for instance, it is derived from "a generally applicable statute that . . . functions irrespective of the existence of an ERISA plan."  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (punctuation omitted); *see also Davila*, 542 U.S. at 212–13 (explaining that there is no independent duty when a defendant's "potential liability" under a state statute "derives entirely from the particular rights and obligations established by the benefit plans").  Plaintiff argues that Section 198-e of the New York Labor Law provides an independent legal duty.  (1st Pl. Mem. at 7–9.)  Plaintiff is wrong.  The text of Section 198-e makes clear that it does not provide for an independent legal duty, so ERISA preempts this action.

Section 198-e is in Article 6 of the New York Labor Law, N.Y. Lab. Law § 190 *et seq.*, which authorizes employees to bring civil actions to recover unpaid wages and "benefits," which the law defines to include "health, welfare[,] and retirement benefits."  *Id*. § 198-c(2); *see, e.g.*, *Contrera v. Langer*, 314 F. Supp. 3d 562, 569–70 (S.D.N.Y. 2018) (discussing claims and remedies available under Article 6).  Specifically, Section 198-e provides, *inter alia*, that:

> A contractor making or taking a construction contract shall be liable for any debt
> . . . owed to an employee or third party on the employee's behalf, incurred by a
> subcontractor at any tier acting under, by, or for the contractor or its subcontractors
> for the employee's performance of labor.

10

N.Y. Lab. Law § 198-e(1).  Plaintiff's Section 198-e claim is that OHM owes it "benefits" on behalf of OHM's employees within the meaning of the Labor Law because of OHM's delinquent plan contributions, and that Section 198-e makes Structure Tone liable for OHM's debt.  (*See* Compl. ¶¶ 20, 30–34.)  For purposes of this Opinion & Order, I adopt the parties' shared assumption that Section 198-e supports a claim against a general contractor to recover an employee-benefit-related debt from a subcontractor.  (*See id.*; 1st Def. Mem. at 2–3.)

The Supreme Court has considered whether various state liability laws—like Section 198-e—are "generally applicable" and not preempted, or "relate[] not merely to pension benefits, but to the essence of the pension plan itself" and therefore are preempted.  *Ingersoll-Rand*, 498 U.S. at 139–40 (emphasis omitted).  In *Fort Halifax Packing Co., Inc. v. Coyne*, the Court held that ERISA did not preempt "a Maine statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing," because the statute "neither establishe[d], nor require[d] an employer to maintain, an employee benefit plan."  482 U.S. 1, 3, 12 (1987) (emphasis omitted).  In *Mackey v. Lanier Collection Agency & Service, Inc.*, the Court held that a Georgia garnishment law that permitted enforcement of court judgments against an ERISA welfare benefit plan was not preempted, "even when those [garnishment] mechanisms prevent plan participants from receiving their benefits" otherwise due under ERISA.  486 U.S. 825, 831–32 (1988).  Two years later, however, the Court concluded that ERISA does preempt "a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA."  *Ingersoll-Rand*, 498 U.S. at 135.  In so holding, the Court distinguished *Mackey* by explaining that the fact that the Georgia law "might burden the administration of a plan did not, by itself, compel preemption," and distinguished *Fort Halifax* on the ground that "the statute did not require the establishment or maintenance of an ongoing

plan." *Ingersoll-Rand*, 498 U.S. at 139 (citations and punctuation omitted).  Under the wrongful-discharge cause of action at issue in *Ingersoll-Rand*, on the other hand, "the existence of a pension plan [was] a critical factor in establishing liability." *Ingersoll-Rand*, 498 U.S. at 139–40. Relatedly, in *Peacock v. Thomas*, the Court held that ERISA neither provided a cause of action for nor supported ancillary federal jurisdiction over an action to pierce the corporate veil to collect a judgment on an underlying ERISA action.  516 U.S. 349, 353–55 (1996).

Plaintiff cites two Second Circuit cases—*Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561 (2d Cir. 1995), and *Burgio & Campofelice, Inc. v. New York State Department of Labor*, 107 F.3d 1000 (2d Cir. 1997)—for the proposition that Section 198-e only has an "indirect effect on plan assets" and is therefore not preempted.  (1st Pl. Mem. at 5–6.)  The plaintiff in *Romney I* similarly invoked *Greenblatt* in a petition for rehearing that was denied by the Second Circuit.  *Romney v. Lin* (*Romney II*), 105 F.3d 806, 808 (2d Cir. 1997).

In *Greenblatt*, the Second Circuit considered whether ERISA preempted a fund's lawsuit against a surety to recover on the surety's default on bond payments that, per the terms of a collective bargaining agreement, were meant to secure an employer's fund contribution requirements.  *Romney II*, 105 F.3d at 809 (citing *Greenblatt*, 68 F.3d at 567).  The Court of Appeals held that such an action did not fall within the scope of ERISA Section 502(a)'s enforcement provisions because the plaintiff's lawsuit depended only on a contractual bond agreement—the surety was "not itself directly obligated under the terms of the collectively bargained agreement to make any contributions; its obligations arose solely under the bond." *Id*. (quoting *Greenblatt*, 68 F.3d at 576 (alteration adopted)).

Similarly, in *Burgio*, the Second Circuit rejected an argument that ERISA preempted a state enforcement action against a general contractor to enforce the general contractor's

liability—under Sections 220 and 223 of the New York Labor Law—for a subcontractor's obligation to pay employees a locally prevailing rate of wages and wage supplements, including benefits. 107 F.3d at 1003. The Court reasoned that the state's action was not an "alternative enforcement mechanism" of ERISA Section 502(a) because the defendant's obligation did "not arise under ERISA or a collective bargaining agreement providing for ERISA benefits, but directly under Labor Law § 223," noting further that "[t]he monies that [had] been withheld [were] not owed to an ERISA plan, to whom the sub-subcontractor failed to pay contributions, but to individual workers." *Burgio*, 107 F.3d at 1009–10.

Here, I find that *Romney v. Lin* is again instructive—in the supplemental opinion denying the plaintiff's petition for rehearing, the Court of Appeals explained why it rejected an argument that "an action does not fall within ERISA § 502(a)[] if the plaintiff does not assert a violation of a provision of ERISA or of a plan." *Romney II*, 105 F.3d at 811. The plaintiff had asserted its claim for plan contributions under a New York law that imposed joint and several liability on a company's shareholders for the company's "'debt'—defined to include 'employer contributions to pension or annuity funds'—'due and owing to any of [the corporation's] laborers, servants or employees for services performed by them for such corporation.'" *Id.* (quoting N.Y. Bus. Corp. Law. § 630(a), (b) (alterations adopted)). Similarly, Plaintiff's claim here is based on Section 198-e's imposition on a general contractor of "joint[] and several[]" liability for a subcontractor's "unpaid wages, benefits, [or] wage supplements." N.Y. Lab. Law. § 198-e(5). Indeed, Plaintiff argues—as did the *Romney* plaintiff—that the genesis of its cause of action comes from the generally applicable joint-and-several liability of Section 198-e, rather than the ERISA obligation to contribute to a plan. *See Romney II*, 105 F.3d at 811.

13

The Second Circuit in *Romney II* rejected the notion that New York's shareholder-liability law did not invoke a legal duty independent from ERISA. *See* 105 F.3d at 811–13. Similarly, *Romney II* causes me to reject Plaintiff's contention here that Section 198-e provides an independent legal duty for its action. In *Romney II*, the Court of Appeals emphasized that a cause of action under New York's shareholder-liability law did not invoke a legal duty independent from ERISA, as the plaintiff's action was "not a suit to collect a judgment," but rather "a suit to collect directly from shareholders the delinquent contributions that the corporate employer has not paid." 105 F.3d at 810.

Plaintiff faces the exact same problem here. The debt that Plaintiff seeks to collect from Structure Tone is based on OHM's "required benefit contributions." (Compl. ¶ 33.) The law that makes OHM's contributions "required"—or as Plaintiff describes them, "delinquent," (*id.* ¶ 34)—is not Section 198-e of the New York Labor Law, but Section 515 of ERISA. As discussed, "ERISA § 502(a) already provides a cause of action to enforce employer contributions to ERISA plans: a plan fiduciary may obtain relief for delinquencies pursuant to ERISA § 515." *Romney I*, 94 F.3d at 81. Plaintiff's cause of action, then, is just like the preempted cause of action described in *Ingersoll-Rand*, because "there simply is no cause of action if there is no plan." 498 U.S. at 140 (emphasis omitted); *cf. Fort Halifax*, 482 U.S. at 12 (explaining that a law that functioned irrespective of an ERISA plan was not preempted by the federal statute). Put another way, by virtue of Section 198-e, Structure Tone stands in OHM's shoes, taking on the general contractor's liability under the CBA to contribute to the benefit plan. ERISA supplies the means to enforce that liability against OHM, and because ERISA preempts alternative means of enforcement, it preempts a Section 198-e claim.

14

Plaintiff resists this conclusion, arguing that it is undisputed that "the basic right to payment has already been established," and "the only remaining dispute is the untimely payment of the debt owed by [OHM] for which Structure Tone is jointly and severally liable." (Remand Reply at 7.) This argument ignores the formal distinction courts draw between (1) actions to recover on existing state-law debts that happen to be based on ERISA obligations—such as a garnishment action following a court judgment, *Mackey*, 486 U.S. at 831–32, or an action to enforce a surety's bond payment obligation, *Greenblatt*, 68 F.3d at 567—and (2) actions that require the claimant to establish an ERISA obligation in order to prevail, *see Ingersoll-Rand*, 498 U.S. at 140; *Romney I*, 94 F.3d at 81. The former state-law-debt category of lawsuits is not preempted, because such actions do not require the plaintiff to allege an ERISA violation to obtain relief. *See Peacock*, 516 U.S. at 355 (discussing differences between the judgment in an "original ERISA suit" and a subsequent action to pierce the corporate veil to enforce that judgment). They are thus not considered to have "a factual and logical dependence" on the legal obligation giving rise to the judgment. *Id.*

Here, contrary to Plaintiff's contention, Defendant has not admitted that OHM owes a delinquent-contribution debt to the Funds. (*See generally* Ans. (declining to take a position on Plaintiff's allegations as to OHM).) *Cf. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (explaining that even when a federal court enters a default judgment against a defendant in a plan's delinquent-contribution action, the court still must determine the plan's damages). More to the point, unlike in *Mackey*, *Peacock*, or *Greenblatt*, Plaintiff cannot point to a judgment of any court, a debt instrument, or anything else to support the subcontractor-debt element of their Section 198-e claim aside from OHM's ERISA contribution obligation. And it is Section 515 of ERISA that obligates OHM to

make that contribution.  In short, Plaintiff's Section 198-e claim depends on ERISA to create the contribution obligation, and is thus not independent of ERISA.

Since Plaintiff could have enforced OHM's contribution obligation under ERISA Section 502(a), and "there is no other independent legal duty that is implicated by [Structure Tone]'s actions," Plaintiff's Section 198-e claim is "within the scope" of ERISA, preempted by ERISA, and removable to federal court.  *Davila*, 542 U.S. at 209.  Therefore, Plaintiff's motion to remand is DENIED.

### 2.  LMRA Preemption

I next consider Defendant's alternative argument that the LMRA preempts Plaintiff's action.  Section 301 of the LMRA, 29 U.S.C. § 185, preempts state-law causes of action that "directly alleg[e] that a party has violated" the collective bargaining agreement, or "that require interpretation of the terms of" the collective bargaining agreement.  *Kaye v. Orange Reg'l Med. Ctr.*, 975 F. Supp. 2d 412, 420 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962).  The Supreme Court has explained that Congress created the LMRA's preemption provision to provide "a body of federal law for the enforcement of [] collective bargaining agreements."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)).  In rejecting the application of state law in *Lingle*, the Supreme Court meant "to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes."  *Id*. at 404.  As in the ERISA context, when a state-court complaint asserts a state-law cause of action that is preempted by the LMRA, the case is removable to federal court.  *MetLife*, 481 U.S. at 64 (citing *Avco Corp. v. Machinists*, 390 U.S. 557 (1968)).

Like ERISA, the LMRA preempts Plaintiff's claim. As discussed, an element of the claim is that OHM "failed to pay required benefit contributions to Plaintiff in the amount of $1,413,208." (Compl. ¶ 33.) Plaintiff arrives at this amount because "the CBA required OHM, *inter alia*, to remit benefit fund contributions, based on the hourly rates specified in the CMA, to Plaintiff, . . . for each hour worked by OHM's employees." (*Id*. ¶ 13.) Thus, the only way for Plaintiff to establish the subcontractor-debt element of its Section 198-e claim is to consult the terms of the CBA; without that document, there is nothing requiring OHM to contribute to the Funds that Plaintiff represents. *See Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 597–99 (E.D.N.Y. 2007) (explaining that "the resolution of plaintiffs' state law claims require[d] substantial interpretation of the CBAs" because "the court would have to analyze the CBA language to decide whether incentive compensation was actually *earned* before deciding if wages were subsequently deducted in violation of state law"); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 218 (1985) (explaining that the LMRA preempted a state-law cause of action where "the right asserted" was "derive[d] from" a CBA and "defined by [a] contractual obligation" within the CBA, because "any attempt to assess liability [] inevitably [would] involve contract interpretation").

Plaintiff argues that the LMRA does not preempt this action because Defendant is not a party to the CBA or otherwise bound by it. (1st Pl. Mem. at 15.) Plaintiff misses the point. Whether the LMRA preempts an action turns on whether the claim is "'inextricably intertwined with the terms of'" a CBA, not "the individual status of the defendant" as a party to the CBA. *Baker v. Farmers Elec. Coop., Inc.*, 34 F.3d 274, 283–84 (5th Cir. 1994) (quoting *Allis–Chalmers,* 471 U.S. at 212). Numerous courts have rejected similar arguments that the LMRA does not preempt claims against entities that are not parties to a CBA. *See id.*; *Foy v. Giant Food*

*Inc.*, 298 F.3d 284, 289 n.4 (4th Cir. 2002) (citing *Baker*, 34 F.3d at 283–84; *Int'l Union, UMWA v. Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir. 1992)); *Atwater v. N.F.L. Players Ass'n*, 626 F.3d 1170, 1177–78, 1178 n.12 (11th Cir. 2010) (collecting cases).

Because the LMRA preempts Plaintiff's claim, Plaintiff's motion to remand is DENIED.

## IV.    **Plaintiff's Motion for Leave to File an Amended Complaint**

Having found that ERISA and the LMRA preempt Plaintiff's Section 198-e claims, I turn to Plaintiff's motion—conditioned on a finding of preemption—for leave to file an amended complaint.

### A.  *Legal Standard*

Federal Rule of Civil Procedure 15(a)(2) provides that a "court should freely" allow a party to file an amended pleading "when justice so requires."  Courts should deny leave to amend "only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."  *Sly Mag., LLC v. Weider Publ'ns L.L.C.*, 241 F.R.D. 527, 530 (S.D.N.Y. 2007) (quoting *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)).

### B.  *Discussion*

Plaintiff's proposed amended complaint, (Doc. 26-2 ("Am. Compl.")), asserts claims against Defendant Structure Tone and OHM; as discussed, OHM is not currently a party to this action.  The proposed claims are:  (1) delinquent plan contributions under ERISA, asserted against OHM, (*id.* ¶¶ 42–46); (2) violation of the CBA under the LMRA, asserted against OHM, (*id.* ¶¶ 47–51); and (3) joint and several liability under Section 198-e, asserted against Structure Tone for OHM's ERISA and LMRA violations, (*id.* ¶¶ 52–69).

Structure Tone does not oppose amendment of the complaint to include the ERISA and LMRA claims against OHM.  (Second Def. Mem. at 7–9.)  ERISA Section 502(a) provides a cause of action to enforce an employer's delinquent plan contributions.  *See Finkel*, 577 F.3d at 85.  The LMRA provides a similar cause of action for failing to make contributions that are required under a collective-bargaining agreement.  *See Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir. 1994).  Plaintiff's motion for leave to amend the complaint is therefore GRANTED IN PART, only with respect to the ERISA and LMRA claims against OHM, and without prejudice to any defense OHM may seek to assert.

Leave to amend to include the Section 198-e claim, however, is DENIED as futile.  As I have explained, *supra* § II.B., ERISA and the LMRA preempt state-law causes of action to recover delinquent fund contributions.  Congress intended that federal law provide the exclusive means to enforce the requirement to contribute to a fund that is established by a collective bargaining agreement.  *See, e.g.*, *Pilot Life*, 481 U.S. at 54; *Magic Chef, Inc.*, 486 U.S. at 403.  Therefore, a claim under Section 198-e would be futile.  Plaintiff argues that its amended Section 198-e claim cures any prior deficiencies because a Section 198-e "claim can properly stand when a claim is also brought against [OHM] to determine [OHM]'s underlying liability."  (Amend Reply at 4.)  In other words, Plaintiff characterizes its new Section 198-e claim as simply a claim for "joint and several liability."  (*Id*.)  *Cf. Peacock*, 516 U.S. at 354 ("Piercing the corporate veil is not itself an independent ERISA cause of action, but rather is a means of imposing liability on an underlying cause of action." (internal quotation marks omitted)).   The proposed amended complaint belies this assertion, because in that document Plaintiff characterizes its Section 198-e claim as a "claim for unpaid benefit contributions against Defendant Structure Tone."  (Am. Compl. ¶ 59.)  Under binding Second Circuit precedent, ERISA preempts a claim that is pled in

this manner.  *See Romney II*, 105 F.3d at 810 (explaining that ERISA preemption applies when a plaintiff's action is "not a suit to collect a judgment," but rather "a suit to collect directly from [a third-party] the delinquent contributions that the [ERISA employer] has not paid.").  Leave to amend to include a Section 198-e claim is DENIED.

V.    **Defendant's Motion for Judgment on the Pleadings**

Prior to the filing of Plaintiff's motion for leave to amend, Defendant filed a motion for judgment on the pleadings against any claim that Plaintiff asserted against Structure Tone under ERISA.  (*See* 2d Def. Mem. at 20–25.)  Rather than oppose Defendant's motion, Plaintiff sought to amend its complaint; the amended complaint does not assert an ERISA claim against Structure Tone.  Defendant's motion is therefore DENIED as moot.

VI.    <u>**Conclusion**</u>

For the foregoing reasons:  Plaintiff's motion for remand is DENIED; Plaintiff's motion for leave to file an amended complaint is GRANTED IN PART and DENIED IN PART; and Defendant's motion for judgment on the pleadings is DENIED as moot.  Accordingly, it is hereby:

ORDERED that Defendant Structure Tone is DISMISSED from this action.

IT IS FURTHER ORDERED that Plaintiff shall file its amended complaint no later than May 13, 2025.  Plaintiff's amended complaint shall not assert a claim under Section 198-e.

The Clerk of Court is respectfully directed to terminate the pending motions at Docs. 13, 18, and 25.

SO ORDERED.

Dated: April 29, 2025
    New York, New York

Vernon S. Broderick
United States District Judge